# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-3469

JEFFREY T. PETITTI, APPELLANT,

V.

ROBERT A. McDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 5, 2015                                    Decided October 28, 2015)

*Michael S. Just*, of Providence, Rhode Island, for the appellant.

*Brent Bowker*, with whom *Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, *Chief Judge*, and SCHOELEN, and BARTLEY, *Judges*.

SCHOELEN, *Judge*: Jeffrey T. Petitti appeals through counsel, a November 20, 2013, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability rating in excess of 40% for rheumatoid arthritis (RA). Record (R.) at 3-21. This matter was referred to a panel of the Court to address, with oral argument, whether the Board erred in concluding that Mr. Petitti was not entitled to a minimum compensable disability rating for each affected joint under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5002, as read in light of 38 C.F.R. § 4.59. As explained below, the Court concludes that objective evidence of painful motion is required under DC 5002. However, the Court will reverse the Board's factual finding that Mr. Petitti did not have such objective confirmation of painful motion. The Board decision will be vacated and the matter will be remanded for further adjudication so that the Board may determine the proper disability rating for Mr. Petitti's RA.

# I. BACKGROUND

## A. Active Duty

Mr. Petitti served on active duty in the U.S. Air Force from July 1985 to July 1991 and from November 1993 to May 1995. R. at 1003-06. Service treatment records indicate that, in June 1994, Mr. Petitti was seen for a sudden onset of burning pain in his hands, wrists, and feet that was accompanied by swelling, stiffness, and erythema. R. at 794-96, 797, 899. Over the course of the next several months, these symptoms continued, worsened, and spread to the elbows, shoulders, knees, ankles, and hips. R. at 799-824, 897-98, 912. Mr. Petitti also experienced "considerable" morning stiffness for 2 to 3 hours with intermittent redness and tenderness in the hands, which was aggravated with activity. R. at 808, 894. He could no longer work at his private job as a landscaper, and he had difficulty with certain tasks, such as washing dishes. R. at 894. By September 1994, Mr. Petitti was diagnosed by a military physician with seronegative RA and placed on an immunosuppressive drug regimen. R. at 824.

In November 1994, Mr. Petitti underwent an Air Force Medical Evaluation Board proceeding. R. at 695-96. He was provided a physical examination, which indicated that he had compression tenderness of the wrist and fingers with "mild synovial bogginess"[1] in the fingers. R. at 696. Additionally, there was tenderness with range of motion of the shoulders and right hip. *Id.* Mr. Petitti's medication for his RA was continued, but he showed no significant improvement. *Id.* For example, pain in his hands and feet increased. In May 1995, Mr. Petitti was honorably discharged and placed on the Temporary Disability Retired List (TDRL). R. at 1456-57.

## B. Postdischarge

In May 1995, Mr. Petitti submitted a claim for VA disability benefits for RA. R. at 1452-55. In a June 1995 outpatient treatment record from the Rheumatology Clinic at the Madigan Army Medical Center in Tacoma, Washington, a military physician indicated that Mr. Petitti continued to complain of early morning stiffness, which improved with medication. R. at 1445. However, before each dose of medication was administered, his symptoms had also increased. *Id.* The physician

---

[1] "Synovitis" is inflammation of a synovium (membrane); it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within the synovial sac. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1856 (32 ed. 2012) [hereinafter DORLAND'S].

examined Mr. Petitti and noted that he had a full range of motion in all joints with some traces of synovitis in the hands and right knee. *Id.*

In September 1995, a VA regional office (RO) granted disability compensation for RA and assigned a 20% disability rating for this condition under DC 5002, effective May 23, 1995, the date after he was separated from service.[2] R. at 1438-41, 1005. Mr. Petitti did not appeal that decision and it became final.

In September 1996, Mr. Petitti underwent a TDRL reexamination conducted by the Air Force Physical Evaluation Board in which he reported having episodes of morning stiffness in his joints that lasted anywhere from 20 minutes to as long as an hour. R. at 1433-35. On examination, he had a full range of motion throughout all his joints with no evidence of redness, swelling, effusion, or tenderness. R. at 1434. The diagnosis was "seronegative nonerosive [RA] that is currently in remission." *Id.* The examiner noted that Mr. Petitti had a good response to medication; however, Mr. Petitti stated that he could not perform the fine hand movement required of his previous military job as an electronics technician or work in the private sector as a landscaper. *Id.* The examiner opined that it was unlikely that Mr. Petitti could return to active duty or resume his former occupations. R. at 1435. Finally, the examiner concluded that "although [Mr. Petitti's] arthritis has been quiescent, the course of his arthritis is unpredictable and he could suffer a flare[up] in the future." *Id.* Mr. Petitti was ultimately discharged from the Air Force with disability severance pay. R. at 1436-37.

In June 2006, Mr. Petitti was seen and treated by a VA physician for complaints of increased stiffness in his feet, hands, wrists, elbows, and ankles. R. at 1360. Because of swelling of the hands and wrists in the mornings, he could not make a fist. *Id.* The swelling subsided during the day. *Id.* Mr. Petitti also stated that when the weather changed, his condition became more symptomatic. *Id.* Upon examination, the physician noted that Mr. Petitti's elbows and wrists were tender and that there

---

[2] Under DC 5002, RA is rated one of two ways. If the RA is "active," then disability ratings from 20% to 100% are assignable depending upon the severity of the symptoms. Alternatively, if the RA is not "active," it may be rated on the basis of chronic residuals such as limitation of motion. 38 C.F.R. § 4.71a, DC 5002 (2015). DC 5002 provides that the limitation of motion should be rated under the appropriate DCs for the joints involved. *Id.* When limitation of motion is noncompensable, a 10% rating is applicable for each major joint or group of minor joints involved. These ratings are to be combined but not added. The DC states that the limitation of motion must be "objectively confirmed by findings such as swelling, muscle spasm, or other satisfactory evidence of painful motion." *Id.*

was a "trace" of synovitis in the wrists. *Id.* Additionally, there was crepitus in the knees without effusion and tenderness in the toes. *Id.* The physician noted that Mr. Petitti had "definite [g]elling"[3] and pain in his joints. *Id.* The physician remarked that Mr. Petitti was having a mild "rheumatoid flare" and ordered additional medication. *Id.*

In February 2007, Mr. Petitti filed a claim for an increased rating for RA. R. at 1394. A VA treatment note from that same month indicates that the main joints involved were his shoulders, elbows, wrists, hands, feet, and ankles. R. at 1361. A VA physician examined Mr. Petitti and found that he had synovitis of the right wrist with a trace of synovitis in his left wrist, and synovitis bilaterally in the joints of the hands. *Id.*

A March 2007 VA treatment note indicates that Mr. Petitti reported morning stiffness that lasted for 1 to 2 hours. R. at 1362. The VA physician examined Mr. Petitti and found that he had no swollen or tender joints. R. at 1363.

In April 2007, Mr. Petitti underwent a VA infectious, immune, and nutritional disabilities examination. R. at 1366-70. He reported that after a recent change in medication, his symptoms were "stable." R. at 1367. The examiner noted that Mr. Petitti experienced general weakness and fatigue. *Id.* Mr. Petitti reported monthly flareups, which lasted for one day. *Id.* His last flareup occurred shortly before his examination. *Id.* He reported that he had more than six flareups in the past year. *Id.* The flareups affected his energy level, and he could not work more than 20 consecutive minutes without resting. R. at 1370. Additionally, Mr. Petitti reported painful joints in his hands. *Id.* His symptoms were worse in the morning upon awakening and improved during the day with activity. R. at 1367. He experienced increased pain when he wrote for more than 5 minutes. R. at 1369. During the examination, he reported having a dull ache in his hands. R. at 1367. He had a full range of motion in the hands, feet, and ankles, which did not decrease with repetitive motion. R. at 1368. However, Mr. Petitti reported that following repetitive motion testing he had stiffness in the hands. *Id.*

Further, the examiner indicated that Mr. Petitti had been employed full time, and during the past year, he had not lost any time from work. R. at 1369. However, he recently left his job as a

---

[3] "Gelling" in arthritis means "becoming stiff and fixed in any position when movement does not occur for a prolonged period." http://medical-dictionary.the free dictionary.com/gelling (last visited Oct. 26, 2015).

delivery driver because he was afraid that while driving his joint pain would be exacerbated. *Id.* The examiner concluded that Mr. Petitti's RA had "significant effects" on his occupational ability because of "decreased mobility, manual dexterity[,] lack of stamina," and increased tardiness. R. at 1370. Additionally, the examiner concluded that the RA affected Mr. Petitti's daily activities. *Id.* For example, the examiner indicated that Mr. Petitti's RA had a "mild" effect on recreation and travel and a "moderate" effect on sports and exercise. *Id.*

In May 2007, the RO denied Mr. Petitti's claim for a rating increase. R. at 1354-58. In September 2007, Mr. Petitti filed a Notice of Disagreement with that decision asserting that his RA was frequently exacerbated. R. at 1351. In support of his claim, he submitted to the RO a note from his treating VA rheumatologist stating that "[o]ver the past year, [Mr. Petitti's RA] has worsened requiring additional medications to control his disease." R. at 1352. Mr. Petitti perfected his appeal to the Board. R. at 1302.

In August 2011, the Board remanded the claim with instructions that Mr. Petitti undergo a VA examination and obtain VA treatment records from March 2008 to the present. R. at 1260-66. These records showed that Mr. Petitti experienced morning joint stiffness and fatigue. R. at 491-92, 494, 1226, 1330. Mr. Petitti rated his morning joint pain a 6 and on a scale of 1 to 10. R. at 278, 1037, 1200-01, 1226. This pain lasted from 30 minutes to 3 hours. R. at 178, 186, 215, 278, 1037, 1056. During the day, the pain was reduced to a 4 and increased to a 5 by the evening. R. at 278.

Additionally, VA medical treatment records indicate that Mr. Petitti's RA medication caused recurrent rashes, with secondary infections, affecting many areas including his nose, right eye lid, scalp, trunk, thighs, and pubic area. R. at 1054, 1059, 1129-30, 1177-78, 1200-01. He also suffered from other symptoms that were attributed to his medication, including rapid heart beat, vertigo, dizziness, headaches, and blurred visions. R. at 1192. As a result of these side effects, his medication was periodically changed. R. at 1036. After receiving infusions of his latest RA medication, Mr. Petitti experienced occasional incapacitating flareups that lasted 2 to 3 days, causing him to miss work. *Id.*

In October 2011, Mr. Petitti underwent a VA examination. R. at 305-31. The examiner noted that Mr. Petitti had pain and stiffness in his joints, including the ankles, knees, hands, and back. *Id.* at 305. Mr. Petitti had a full range of motion of his joints, and the examiner remarked that

there was no objective evidence of painful motion during the range-of-motion testing or following repetitive testing. *Id.* at 312-14, 318-20, 322-25. The 2011 VA examiner found that Mr. Petitti had painful joints and noted that his RA caused "decreased mobility, weakness or fatigue, and pain." R. at 321.

In November 2012, the RO increased the disability rating for the service-connected RA to 40%, effective October 11, 2011, the date of the VA examination. R. at 436-44. In January 2013, the Board determined that Mr. Petitti was entitled to a 40% disability rating for the entire period starting in February 2007. The Board also denied a disability rating in excess of 40% for RA. R. at 427.

Mr. Petitti appealed the Board decision to the Court, and in July 2013, the parties filed a joint motion for remand (JMR), which the Court subsequently granted. R. at 395. The parties agreed that the Board did not provide an adequate statement of reasons or bases for its decision because the Board did not discuss whether Mr. Petitti was entitled to an "additional, separate rating" under 38 C.F.R. § 4.59. R. at 397.

In September 2013, Mr. Petitti submitted an affidavit describing an increase in his symptomatolgy and pain. R. at 35-36. He stated that his arthritis affected every joint in his body, but that it was worse in his feet, ankles, knees, hips, fingers, and wrists. R. at 35. He noted that his joints are swollen and ached when he awakened. *Id.* He rated his joint pain as an 8 or 9 on a scale of 1 to 10. *Id.* Throughout the day, he suffered from a dull throbbing pain that he rated as a 4 to 5. *Id.* When he suffered severe flareups, the pain remained high throughout the day and lasted from 2 to 4 days. *Id.* He also stated that his RA limited his ability to stand, walk, and sit. *Id.* He became fatigued walking to the mailbox at the end of his driveway. *Id.* He could not sit for a long period without his joints swelling and aching. *Id.* He missed work 4 to 5 times a year with each absence lasting from 2 to 3 days. *Id.*

Additionally, Mr. Petitti submitted an affidavit from his daughter, who lived with him. R. at 33-34. She attested to her father's difficulties in functioning because of his joint pain, noting that he had difficulty holding a mug, preparing meals, and doing yard work. *Id.* She also observed that prolonged standing and walking aggravated his symptoms. *Id.*

On November 20, 2013, the Board issued the decision on appeal. R. at 2-23. The Board found that, throughout the period of the appeal, Mr. Petitti's disability "has primarily been manifested by morning stiffness, pain, and periodic swelling of his hands, feet, ankles, elbows, wrists, shoulders, and spine; fatigue; and flare ups occurring as frequently as once a month to once every five or six months." R. at 16. Additionally, the Board found that "there is objective evidence of stiffness, gelling, tenderness, and synovitis affecting multiple joints." *Id.* Further, the Board determined that Mr. Petitti's complaints of joint pain were "credible and competent." R. at 20. Nonetheless, the Board determined that Mr. Petitti was not entitled to a disability rating higher than 40% under DC 5002. R. at 16-17. Additionally, the Board determined that because the VA examinations did not show "limited motion" on range- of-motion testing or "objective evidence of pain on movement even following repetitive testing," Mr. Petitti was not entitled to a 10% disability rating for each joint under 38 C.F.R. § 4.59. R. at 19.

## II. THE PARTIES' ARGUMENTS

This case involves the interplay between 38 C.F.R. § 4.71a, DC 5002 and 38 C.F.R. § 4.59. Initially Mr. Petitti argued that "§ 4.59 provides independent bases for awarding a compensable rating." Appellant's Supplemental Memorandum of Law at 2. However, at oral argument, Mr. Petitti agreed with the Secretary that § 4.59 does not create a "free-standing avenue" for compensable disability ratings based on pain. *See* May 5, 2015, Oral Argument Recording at 18:08-38; Secretary's Brief (Br.) at 9. Instead, at oral argument, Mr. Petitti agreed with the Secretary that § 4.59 and, in this case DC 5002, work in tandem to authorize a minimum compensable rating of 10%, per joint, to be combined but not added, for painful motion even though there is no actual limitation of motion. *See* May 5, 2015, Oral Argument Recording at 18:08-38; Secretary's Br. at 9-11. However, the parties do not agree on what constitutes painful motion and what evidence the Board is required to consider when making this determination.

On the one hand, Mr. Petitti contends that the Board is required to consider *all* lay and medical evidence regarding pain. Appellant's Br. at 7-9; Appellant's Reply Br. at 7-9; Appellant's Supplemental Memorandum of Law at 1, 4-6. Mr. Petitti urges the Court to reverse the Board decision and argues that the Board's decision failed to take into account the lay evidence regarding

Mr. Petitti's joint pain, which he experiences both at rest and while in motion during activities such as walking, standing, and sitting. Appellant's Br. at 7-9; Appellant's Reply Br. at 1.

The Secretary counters that under § 4.59 painful motion is required and the mere presence of joint pain is not sufficient. Secretary's Supplemental Memorandum of Law at 4-5, 8-10. Further, he contends that "objective" evidence is the only evidence the Board may consider. Secretary's Br. at 11; Secretary's Supplemental Memorandum of Law at 4, 8-10. Because the VA examinations did not show that Mr. Petitti had painful motion during the range-of-motion testing, the Secretary argues that the Board decision should be affirmed. Secretary's Br. at 9-10.

### III. ANALYSIS

The "interpretation of a statute or regulation is a question of law," *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003), and the Court's review is performed de novo, *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004); *see also Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (stating that the canons of statutory interpretation also apply to interpreting regulations). Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure. *See Sharp v. Shinseki,* 23 Vet.App. 267, 271 (2009); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's [or regulation's] plain meaning requires examining the specific language at issue and the overall structure of the statute [or regulation]." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05, (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115, 115, (1994). If the plain meaning of a regulation is clear from the language, that meaning controls and that is the end of the matter. *Pacheco v. Gibson*, 27 Vet.App. 21, 25 (2014); *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996). An agency's interpretation of an ambiguous regulation is entitled to substantial deference by the Court so long as that interpretation is not inconsistent with the language of the regulation or is otherwise plainly erroneous and represents the agency's considered view on the matter. *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) (citing *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997))).

A. Interplay Between DC 5002 and § 4.59

To resolve the questions before the Court, it is necessary to examine DC 5002 and § 4.59. Thus, the starting point is the text of the regulations.

Title 38 C.F.R. § 4.71a, DC 5002, describes how, under the disability rating schedule, RA is to be evaluated as follows:

As an active process:

With constitutional manifestations associated with active joint involvement, totally incapacity          100

Less than criteria for 100% but with weight loss and anemia productive of severe impairment of health or severely incapacitating exacerbations occurring 4 or more times a year or a lesser number over prolonged periods          60

Symptom combinations productive of definite impairment of health objectively supported by examination findings or incapacitating exacerbations occurring 3 or more times a year          40

One or two exacerbations a year in a well-established diagnosis          20

For chronic residuals:

For residuals such as limitation of motion or ankylosis, favorable or unfavorable, rate under the appropriate diagnostic codes for the specific joints involved. *Where however, the limitation of motion of the specific joint or joints involved is noncompensable under the codes a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5002. Limitation of motion must be objectively confirmed by* findings such as swelling, muscle spasm, or *satisfactory evidence of painful motion.*

> Note: The ratings for the active process will not be combined with the residual ratings for limitation of motion or ankylosis. Assign the higher evaluation.

38 C.F.R. § 4.71a, DC 5002 (emphasis added). Thus, under DC 5002, a claimant with RA is given the higher of two evaluations evaluated either (1) as an active process or (2) based on the chronic residuals associated with the disease such as limitation of motion or ankylosis.

For chronic residuals, the first sentence of DC 5002 provides that a claimant is to be evaluated under the DC that is appropriate for the specific joint involved. If the claimant has *actual* limitation of motion, which meets the criteria of the appropriate DC involved, he or she may be assigned the corresponding disability rating under the relevant DC. However, the second sentence of DC 5002 regarding chronic residuals goes on to state that limitation of motion that is noncompensable under the appropriate DC for the affected joint may still be compensable on the basis of a minimum disability rating for each major joint or group of minor joints affected. The last sentence of DC 5002 provides that limitation of motion must be objectively confirmed by, among other things, satisfactory evidence of painful motion. Thus, the plain language of DC 5002 makes limitation of motion a prerequisite for both a compensable disability rating under the DC relevant to the particular joint involved and for a minimum disability rating.

Section 4.59 is one of several regulations that precede the rating schedule for the musculoskeletal system and explain how to arrive at proper evaluations under the DCs appearing in the disability rating schedule. *See generally DeLuca v. Brown*, 8 Vet.App. 202, 204-08 (1995); *Schafrath v. Derwinski*, 1 Vet.App. 589, 591-93 (1991). Section 4.59, entitled "Painful Motion," provides:

> *With any form of arthritis, painful motion is an important factor of disability*, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. *The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint.* Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in

10

weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

38 C.F.R. 4.59 (2015) (emphasis added).

The first sentence of § 4.59 notes that painful motion is an important factor of a disability.[4] The fourth sentence of the regulation goes on to state that it is the intent of the rating schedule to recognize that painful motion of a joint is capable of causing disability, and the fifth sentence ensures that a veteran experiencing an "actually" painful joint is entitled to at least the minimum compensable rating for the joint under the appropriate DC to the joint involved.[5,6]

Hence, the plain language of DC 5002 and § 4.59 each provide that a claimant may be entitled to a minimum disability rating. Under DC 5002, a minimum disability rating is triggered where there is limitation of motion, which is manifested by "satisfactory evidence of pain." Under § 4.59, the trigger for a minimum disability rating is an "actually painful, unstable, or malaligned joint[ ]." Section 4.59 plainly speaks to both the "painful motion" of joints and "actually painful" joints. "Actually" means "existing in fact or reality." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (1961) [hereinafter WEBSTER'S]. Reading § 4.59 and DC 5002 together, the Court finds the terms "painful motion" and "actually painful motion" to be synonymous. We cannot conceive of a situation in which an "actually painful" joint would not necessarily connote a joint that was painful on motion. As discussed more fully below, prior Court interpretations guide the Court as to the meaning of the terms "limitation of motion" and "painful motion," referred to in these

---

[4] In *Burton v. Shinseki*, 25 Vet.App. 1, 5 (2011), the Court held that the regulation is not limited to arthritis.

[5] At oral argument, the Secretary stated that this sentence of the regulation applies to painful motion that is caused by either a healed injury or a disease. *See* May 5, 2015, Oral Argument Recording at 29:30-31:25.

[6] In his brief, the Secretary contends that, under his longstanding interpretation of § 4.59, a claimant is entitled to a minimum compensable disability rating for a joint where there is "painful motion" even though there is no actual limitation of motion. Secretary's Br. at 9-10. The Secretary also notes that he espoused this view in VA Gen. Coun. Prec. 9-98 (Aug. 14, 1998). *Id.* Additionally, the Court observes that the Secretary has taken this view in previous pleadings filed with this Court. *See Mitchell v. Shinseki*, U.S. Vet. App. No. 09-2169, Secretary's Response (Resp.) to April 6, 2011, Order at 1 (stating a veteran is entitled to a minimum compensable disability rating for a joint where there is "painful motion" even though "there is no actual limitation of motion that meets a compensable threshold under the applicable diagnostic criteria"); *see also Burton v. Shinseki*, U.S. Vet. App. No. 09-2873, Secretary's Resp. to May 9, 2011, Order at 2-3.

11

regulations, and how they operate together to enable a claimant to receive a minimum compensable disability rating.

## B. Prior Court Interpretations

In *Lichtenfels v. Derwinski*, 1 Vet.App. 484 (1991), this Court analyzed the relationship between § 4.59 and DC 5003 (for degenerative arthritis). The Court's discussion is particularly instructive because the structure and language of DC 5003 is similar to those of DC 5002. Under both DCs, a claimant whose arthritis limits the range of motion of a joint or joints will be evaluated under the DCs specifically applicable to the particular joint or joints when the limitation is compensable. Such a claimant will be assigned a compensable rating for *actual* limitation of motion under the DC for the specific joints involved. Additionally, DC 5003, like DC 5002, provides that limitation of motion that is noncompensable under the DC for the affected joint may otherwise entitle a veteran to a 10% disability rating for each major joint or group of minor joints affected, where there is limitation of motion objectively confirmed by "satisfactory evidence of painful motion."

In *Lichtenfels*, the Court held that "[r]ead together, DC 5003[] and § 4.59, thus state that painful motion of a major joint or groups [of minor joints] caused by degenerative arthritis, where the arthritis is established by x-ray, is deemed to be limited motion and entitled to a minimum 10[%] rating, per joint, . . . even though there is no actual limitation of motion." 1 Vet.App. at 488 (emphasis omitted). Thus, *Lichtenfels* concluded that the minimum disability rating under DC 5003 (for limitation of motion manifested by pain) dovetails with the minimum disability rating under § 4.59 (for painful motion). Essentially*, Lichtenfels* held that § 4.59 serves as a bridge linking painful motion and limitation of motion, with the result that a claimant who has painful motion is considered to have limited motion under DC 5003 even though actual motion is not limited. *Lichtenfels, supra*. Because of the striking similarities between the language in DCs 5002 and 5003 pertaining to the assignment of a minimum rating for noncompensable limitation of motion, the Court concludes that *Lichtenfels*'s interpretation of the effect of § 4.59 on DC 5003 also applies to DC 5002.[7] Thus, when

---

[7] The Court recognizes that DC 5002 and DC 5003 are not identical. Under DC 5003, a claimant need not demonstrate limitation of motion—which, as we have just clarified, can be evidenced by a showing of painful motion—when the claimant has x-ray evidence of degenerative arthritis involving two or more major joints or two or more minor groups of joints. DC 5002 does not have a corresponding x-ray provision. However, this difference between

DC 5002 is read in conjunction with § 4.59, painful motion of a joint is deemed to be limited motion of that joint, and evidence of painful motion satisfies the requirement for limited motion under DC 5002. Because the Court holds that § 4.59's reference to "painful motion" is equated with the reference to "limitation of motion" in DC 5002, a claimant with RA who demonstrates that he has painful motion of a joint is entitled to the minimum disability rating for that joint under DC 5002 and § 4.59, even though the claimant does not have actual limitation of motion.

Further, it is important to view the Court's holding in this case in relation to *Mitchell v. Shinseki*, 25 Vet.App. 32 (2011). In *Mitchell*, the appellant was seeking a disability rating increase in excess of 10% for the residuals of reconstructive surgery of the anterior cruciate ligament of the left knee. Because the limitation of motion of her knee was noncompensable under the appropriate DCs for flexion and extension of the knee, she was assigned a 10% disability rating under the second part of DC 5003 for painful motion of the knee.

Not satisfied with the *minimum* disability rating, Ms. Mitchell argued that because she experienced pain throughout the entire range of motion of her left leg, and because *Lichtenfels* held that painful motion is deemed limited motion, the Board should have considered that the motion of her left knee was completely limited and assigned the *maximum* disability ratings under the DCs for flexion and extension because her painful motion was equivalent to limited motion at those levels. *Id.* at 34. The Court in *Mitchell* specifically rejected this argument. The Court noted that the statement in *Lichtenfels* equating painful motion with limited motion was made in the context of a discussion of a *minimum* disability rating and did not "suggest that *maximum* disability ratings were appropriate compensation" for painful motion where the range of motion is not actually limited.[8] Here, like Ms. Lichtenfels, Mr. Petitti is seeking the *minimum* disability rating. Thus, he did not have to show actual limitation of motion that corresponds to the requirements of the appropriate DC for

---

the two DCs is not pertinent to the Court's holding in this case, which is based upon the notable similarities between the language of the two DCs regarding limitation of motion, *i.e.*, painful motion, as a basis for a minimum disability rating.

[8] *Mitchell* also discussed 38 C.F.R. §§ 4.40 and 4.45, regulations that are not relevant to Mr. Petitti's argument for the minimum disability rating for painful motion under DC 5002 and § 4.59. Consideration of these regulations might result in a disability rating higher than the minimum disability rating for a particular joint. *Mitchell* aptly stated that under these regulations "pain in and of itself does not rise to the level of functional loss." *Mitchell*, 25 Vet.App. at 37. Rather,"pain may result in functional loss, but only if it limits the ability 'to perform the normal working movements of the body with normal excursion, strength, speed, coordination[,] or endurance.'" *Id.* (quoting 38 C.F.R. § 4.40 (2011)).

the individual joints. Moreover, because Mr. Petitti is seeking only a *minimum* disability rating, the Court's holding here is consistent with *Mitchell*.

## C. Painful Motion

Having concluded that DC 5002, when read in light of § 4.59, authorizes the minimum disability rating per joint where there is painful, albeit nonlimited, motion, the question remains what constitutes painful motion and what type of evidence is sufficient under the regulation to verify painful motion. Mr. Petitti contends that the Board should make the determination as to painful motion based on *all* evidence, including lay and medical evidence, regarding pain, including the effects of pain on the use of joints in everyday activity such as walking, sitting, and standing. Appellant's Br. at 7-9; Appellant's Reply Br. at 7-9. Appellant's Supplemental Memorandum of Law at 1, 4-6. The Secretary takes a much narrower view and contends that the Board determination is to be based *only* on objective evidence. In this case, he contends that the only objective evidence of painful motion is in the form of the range-of-motion testing. Secretary's Br. at 11; Secretary's Supplemental Memorandum of Law at 4, 8-10.

At oral argument, the Secretary noted that the language of § 4.59 does not state that assignment of a minimum compensable disability rating for a joint requires objective evidence of painful motion. *See* May 5, 2015, Oral Argument Recording at 38:40-48. Nevertheless, the Secretary contends that, when § 4.59 and DC 5002 are read together, it is clear that objective evidence of painful motion is required. He takes this position because he contends that DC 5002 requires objective evidence of painful motion. The Court agrees that § 4.59 does not require objective evidence of painful motion. The regulation does not speak to the type of evidence required when assessing painful motion and therefore certainly does not, by its own terms, restrict evidence to "objective" evidence.

Turning to DC 5002, that regulation states that "[l]imitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion." This sentence plainly requires that "limitation of motion" be "objectively confirmed." "Objective" means "perceptible to persons other than an affected individual." WEBSTER'S at 1556; *see also* DORLAND'S at 1309 (defining "objective" as "perceptible to the external senses"). "To confirm" means "to give new assurance of the truth or validity of: CORROBORATE." WEBSTER'S at 476.

14

Hence, DC 5002 requires that limitation of motion must be corroborated by a person other than the veteran based upon that person's observations.

DC 5002 also describes the evidence that will "objectively confirm" limitation of motion. The verb "confirmed" is followed by the prepositional phrase "by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion." This phrase contains examples of evidence that indicate that a veteran has "limitation of motion." The use of the words "such as" in the phrase connotes that the examples provided are incomplete and part of a nonexhaustive list. The first two examples, "swelling" and "muscle spasm," are specific findings that, if present, "objectively confirm" limitation of motion. The series is completed by the third item: "or satisfactory evidence of painful motion." Unlike the first two items, which are specific and require that a "finding[ ]" be made, the last is general and broadly worded so that it would include *any* information that adequately demonstrates that a veteran has painful motion. Hence, a doctor's observations of a veteran's painful motion–including that observed during range-of-motion tests–fall within the ambit of "satisfactory evidence of painful motion."

However, contrary to the Secretary's assertions, lay statements or evidence may also be included within the umbrella of "objectively confirmed" evidence of painful motion. Because "satisfactory evidence of painful motion" is capacious, it not only includes a doctor's observations of a veteran's painful motion, but also encompasses lay descriptions of a veteran's painful motion. Observations from a lay person who witnesses a veteran's painful motion satisfies the requirement of objective and independent verification of a veteran's painful motion. Thus, the visible behavior or facial expression of a veteran observed by another may constitute "satisfactory evidence of painful motion." *Cf.* 38 C.F.R. § 4.59 (noting that "facial expression, wincing, etc." are useful indicators of painful motion). Therefore, a lay description detailing observations of a veteran's difficulty walking, standing, sitting, or undertaking other activity falls within the scope of "satisfactory evidence of painful motion" that has been "objectively confirmed."[9]

---

[9] VA has promulgated a regulation pertaining to disability compensation benefits for undiagnosed illnesses associated with Persian Gulf veterans. Under that regulation, "'objective indications of chronic disability,' include both 'signs,' in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification." 38 C.F.R. § 3.317(a)(3) (2015). Although this regulation involves a different context (i.e., service connection for disability compensation for Persian Gulf illnesses), VA has recognized that "objective" manifestations of an undiagnosed illness not only include the "objective perceptible"

Lay testimony may also consist of a veteran's own statements to the extent that the statements describe symptoms capable of lay observation. *Jandreau v. Nicholson,* 492 F.3d 1372, 1377 (Fed. Cir. 2007) (lay persons are generally competent to provide evidence on observable symptoms); *see also* 38 C.F.R. § 3.159(a)(2) (2015). However, because DC 5002 requires that "satisfactory of evidence of pain" be "objectively confirmed," a veteran's testimony, alone, is not enough. There must also be objective confirmation from a person other than the veteran or claimant, be it a medical examiner or a lay person, of a veteran's joint pain. Having examined the language of DC 5002, the Court concludes that the Secretary is correct that the provision requires objective evidence of painful motion, but is unpersuaded by his contention that such confirmation is limited to a doctor's finding, specifically involving range-of-motion tests.

Our conclusion is buttressed by *Lichtenfels*, which is illustrative as to the evidence the Board must consider in determining whether painful motion is present. In *Lichtenfels*, the appellant was seeking a 10% disability rating for arthritis of the lumbar spine under DC 5003. Like DC 5002, limitation of motion under DC 5003 "must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of pain." The evidence before the Board included a VA examination in which Ms. Lichtenfels had full range of motion of the lumbar spine without pain or tenderness. The VA examiner also found that she had a history of recurrent arthralgia.[10] Additionally, Ms. Lichtenfels reported to the examiner that when she woke up in the morning, she experienced stiffness and aching all over her lower back, which improved during the day with activity. *Lichtenfels*, 1 Vet.App. at 485.

The Board denied Ms. Lichtenfels a minimum disability rating under DC 5003 for the lumbar spine on the basis that she had a full range of motion of the back without pain. The Court reversed the Board's finding as clearly erroneous and ordered that Ms. Lichtenfels be assigned a minimum (10%) disability rating for her lumbar spine because the evidence showed that she had backaches in the morning and "recurrent arthralgia." *Lichtenfels*, 1 Vet.App. at 487. Thus, *Lichtenfels* found that,

---

evidence from a physician but also other evidence, such as lay testimony, that is "capable of independent verification." It is apparent from the broad language of DC 5002 that "objectively confirmed" findings of painful motion, like "objective indications" in 38 C.F.R. § 3.317(a)(3), include both medical and lay evidence.

[10] "Arthraglia" is "pain in a joint." DORLAND'S at 150.

under DC 5003, a claimant's assertion of painful joints, confirmed by a VA examiner's statement that the claimant has a history of "recurrent" joint pain, is satisfactory evidence of painful motion under DC 5003. If painful motion on range-of-motion tests were the only acceptable evidence of painful motion, *Lichtenfels* would not have reversed the Board decision finding it clearly erroneous.

Here, the record is replete with medical evidence and lay testimony regarding Mr. Petitti's actually painful joints. In September 2013, the appellant and his daughter submitted affidavits describing his actually painful joints and the effects of his pain on his daily activities, including standing, walking, and sitting. The Board described the affidavits as follows:

> His daughter related that her father is walking slower and needing to take more frequent breaks from activities. She stated she has to provide him assistance, especially in the mornings. She mentioned the pain [Mr. Petitti] experiences and how it is worse during weather changes and during flare-ups. [Mr. Petitti] stated his joints are swollen and ache when he wakes up for about an hour or so. He described the pain as "dull" and "throbbing" and that it lasts all day. He stated that he has severe flare-ups about 3 to 4 times a year that will last 2 to 4 days at a time. He reported that his arthritis limits his ability to stand, walk and sit. He stated he is extremely fatigued and has trouble even walking to his mailbox. He indicated he works as a sales associate and his job requires two hours of walking a day. He related that he has about 4 to 5 absences from work a year and misses 2 to 3 days each time.

R. at 16. The Board found the lay evidence that RA is manifested by dull and throbbing joint pain "competent and credible." R. at 16, 20. Additionally, the 2007 VA examiner found that Mr. Petitti had painful joints with "decreased mobility, decreased manual dexterity, and lack of stamina." R. at 1370. A 2011 VA examiner made similar findings of painful joints and noted that Mr. Petitti's RA caused "decreased mobility, weakness or fatigue, and pain." R. at 321. Based on the lay and medical evidence, the Board found that Mr. Petitti's disability "has primarily been manifested by morning stiffness, pain and periodic swelling of his hands, feet, ankles, elbows, wrists, shoulders, and spine; fatigue; and flare-ups occurring as frequently as once a month to once every five or six months." R. at 16. Additionally, the Board found that there "is objective evidence of stiffness, gelling, tenderness and synovitis affecting multiple joints." *Id.* In describing Mr. Petitti's disability picture, the Board found that "[t]here is no doubt that pain exists that is daily and causes fatigue and stiffness." R. at 19.

Despite these findings, the Board determined that Mr. Petitti did not have painful motion of the joints because the VA examiner found that he did not have painful motion during range-of-motion tests performed on the joints. *Id.* The Court finds that the Board erred in concluding that painful motion may be established only by an examiner's findings on range-of-motion tests of the joints. Given the Board's finding that Mr. Petitti was credible, the Board's acceptance of the lay evidence from the veteran's daughter regarding her observations as to the effects of his joint pain on his daily activities, and the Board's notation as to the objective findings made by several VA examiners, the Court holds that the Board's conclusion that Mr. Petitti did not have objective evidence of painful motion of the joints is clearly erroneous. Indeed, the Board's specific findings regarding the evidence support the opposite conclusion: Mr. Petitti had satisfactory evidence of "actually painful" joints; thus, within the meaning of DC 5002, Mr. Petitti had "satisfactory evidence of painful motion." Therefore, the Court will reverse the Board's finding that Mr. Petitti did not have objective evidence of painful motion and remand the matter to the Board to determine the specific joints affected by RA and whether Mr. Petitti would receive a higher disability rating for the chronic residuals of his RA.[11] Reversal is appropriate "where the Board has performed the necessary fact finding and explicitly weighed the evidence" and this Court, based "on the entire evidence, . . . is left with the definite and firm conviction that a mistake has been committed." *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013); *see Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) ("[R]eversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision.").

On remand, Mr. Petitti is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). "A remand is meant to entail a critical examination of the justification for the decision" by the Board. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

---

[11] The Court notes that the appellant clarified in his briefs that he is *not* arguing that he is entitled to a 40% disability rating for RA as an active process *in addition to* a disability rating for this condition based on the chronic residuals. He agrees that this combination is not permissible under the regulations and would constitute pyramiding, *i.e.*, compensating a veteran more than once for the "same disability" or the "same manifestation." 38 C.F.R. § 4.14 (2015).

## IV.  CONCLUSION

After consideration of the appellant's and the Secretary's briefs, and a review of the record on appeal, the Court will REVERSE the Board's finding that Mr. Petitti did not have objective evidence of painful motion, VACATE the November 20, 2013, Board decision, and REMAND the matter for further adjudication so that the Board may determine the proper disability rating for Mr. Petitti's RA.