# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-2083

LARRY E. ENGLISH, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 1, 2018)

*Andrew G. Blais*, of Providence, Rhode Island, was on the brief for the appellant.

*James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Abhinav Goel*, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, ALLEN, and MEREDITH, *Judges*.

ALLEN, *Judge*: United States Army veteran Larry E. English is service connected for patellofemoral syndrome of the right knee with a 10% disability rating. In its May 17, 2017, decision on appeal, the Board of Veterans' Appeals (Board) denied the veteran a higher initial rating for this condition for the period from January 15, 2008, until April 14, 2010. Record (R.) at 2-13.[1] The principal question in this appeal, which is timely and over which we have jurisdiction,[2] is whether the Board inappropriately discounted the veteran's lay testimony of knee instability when denying a separate initial rating under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5257. In addition, we must decide whether the Board's decision not to grant the veteran a higher initial rating under DC 5260 (knee flexion) and 5261 (knee extension) was erroneous.

As to lateral instability under DC 5257, as discussed below, we find significant that in *Petitti v. McDonald*, the Court held that when a "regulation does not speak to the type of evidence required . . . [it] certainly does not, by its terms, restrict evidence to 'objective' evidence." 27 Vet.App. 415, 427 (2015). DC 5257 doesn't speak to the type of evidence required and, thus,

---

[1] VA increased the veteran's rating for his right knee condition to 40% effective April 2010. R. at 855-56. There is no issue concerning that increased rating on appeal.

[2] *See* 38 U.S.C. §§ 7266(a), 7252(a).

objective medical evidence isn't required to establish lateral knee instability under that DC. The Board can't categorically find objective medical evidence more probative than lay evidence with respect to this DC without supporting its conclusion with an adequate statement of reasons or bases. Because the Board here didn't provide adequate reasons or bases when denying the veteran a separate initial rating for his knee disability, *see, e.g.*, R. at 10, we set aside the Board's decision and remand this matter for the Board to render a decision under the correct legal standard and provide an adequate statement of its reasons or bases concerning DC 5257.

Remand is also required for the Board to sufficiently address DCs 5260 and 5261. As we explain, the Board did not provide an adequate statement of its reasons or bases for denying an increased rating for the appellant's right knee disability based on functional loss under 38 C.F.R. §§ 4.40 and 4.45.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The veteran served honorably in the Army from June 1976 to June 1979 and from February 1991 to October 1991. R. at 1524, 1556. In March 2008, a VA regional office (RO) granted him service connection for patellofemoral syndrome of the right knee at a 10% rating, effective January 2008. R. at 1311-12. It's undisputed that ever since he has been contesting that rating. *See, e.g.*, R. at 3.

The RO rated the veteran's right knee condition 10% based on his range of motion and flexion, *see, e.g.*, R. at 1311-12, but there are three DCs that could potentially lead to an initial rating higher than 10% for the appellant's right knee condition. First, DC 5260, which concerns flexion, provides for a 10% rating with flexion limited to 45 degrees, 20% with flexion limited to 30 degrees, and 30% with flexion limited to 15 degrees. 38 C.F.R. § 4.71a, DC 5260 (2018). Second, DC 5261, concerns extension, provides for a 10% rating with extension limited to 10 degrees, 20% with extension limited to 15 degrees, and continuing through the highest schedular rating of 50% when extension is limited to 45 degrees.[3] 38 C.F.R. § 4.71a, DC 5261.

Of particular importance for this precedential decision is the third DC: 5257, which could entitle the veteran to a separate rating for "subluxation or lateral instability" of the knee.[4] That DC

---

[3] The appellant may obtain ratings under both DC 5260 and DC 5261 without violating the rule against pyramiding. *See* VA Gen. Coun. Prec. 9-2004 (Sept. 17, 2004); *see also* R. at 7 (Board acknowledging this fact).

[4] *See* VA Gen. Coun. Prec. 23-97 (July 1, 1997) ¶2 ("DC 5257 provides for evaluation of instability of the knee without reference to limitation of motion."); *see also* R. at 7 (Board recognizes that ratings under a range-of-motion DC and

allows ratings based on "[r]ecurrent subluxation or lateral instability," providing for a 30% rating when such symptoms are severe, 20% when moderate, and 10% when slight. 38 C.F.R. § 4.71a, DC 5257.

During his initial claim and administrative appeal, VA afforded the veteran several medical examinations. As relevant to the lateral knee instability issue, a February 2008 VA examiner noted the veteran's lay complaints of knee instability, but found no knee instability upon examination. R. at 1322, 1324. An August 2009 examiner noted the veteran's same complaints, but also found no knee instability upon examination. R. at 1104, 1105. An April 2010 examiner similarly found no knee instability upon examination. R. at 865.

The veteran's claim was pending as an appeal for a considerable amount of time after his July 2008 Notice of Disagreement was filed and before the May 2017 Board decision was issued. Leaving aside all the examinations, he's had a Board hearing, R. at 316-25, and his claim has been the subject of four Board decisions. R. at 1052-57 (Dec. 2009); 299-312 (Dec. 2015); 153-58 (Oct. 2016); and 2-13 (May 2017). In addition, he's been before this Court. He appealed the Board's December 2015 decision, the result of which was a joint motion for remand (JMR). R. at 168-73. In that motion, the parties agreed that remand was required in part because the Board had failed to explain why the veteran's statements on instability were insufficient to support a rating under DC 5257. R. at 170-71. Of importance to DCs 5260 and 5261, the parties agreed that remand was warranted "because the Board erred when it did not provide an adequate statement of reasons or bases for denying [a]ppellant's claim when it did not discuss evidence of functional loss and whether an increased rating could be based upon that evidence." R. at 168-69. The parties concluded this section of their JMR as follows: "Appellant's claim should be remanded in order for the Board to discuss this evidence of functional loss and whether an increased rating could be based upon that evidence." R. at 170.

In an October 14, 2016, decision, the Board remanded the matter to the RO directing that it "[s]chedule the [v]eteran for a VA medical examination in order to obtain a retrospective evaluation in regard to his service-connected right knee disability." R. at 156. The Board also directed that

> [t]he examiner should, to the extent possible, provide a retrospective opinion
> addressing prior range of motion of the right knee, painful motion (and at what

---

DC 5257 would not violate "the prohibition on pyramiding").

3

point it started), additional loss of motion after repetitions, and functional loss due to pain – considering active and passive as well as weight-bearing and nonweight-bearing consideration from January 15, 2008[,] until April 14, 2010. This retrospective opinion should also include comparison with any paired joints.

*Id.* The appellant underwent this examination on November 9, 2016. R. at 95-118.

All of this led to the decision on appeal, in which the Board again denied the veteran an initial rating higher than 10% under all three relevant DCs: 5257, 5260, and 5261. R. at 2-13. With respect to DCs 5260 and 5261, the Board determined that record evidence did not support an increased rating under these two DCs. R. at 8-10. Of particular relevance to lateral knee instability under DC 5257, the Board's analysis section began with this statement: "The Board has reviewed all of the evidence in the [v]eteran's claims file, with an *emphasis* on the medical evidence for the issue on appeal." R. at 8 (emphasis added). The Board didn't explain why it placed "an emphasis" on the medical evidence. Nor did it explain what it meant to put "emphasis" on one type of evidence. The Board then considered the various examination reports before it, discussing both the veteran's "subjective" statements concerning knee instability as well as what the medical examiners "[o]bjectively" reported. R. at 8-9. After canvassing these reports, the Board concluded that the veteran wasn't entitled to a separate rating under DC 5257 and, so, after taking into account that DC, nothing more than a 10% rating for his knee condition was justified. The key passage of the Board's decision supporting this conclusion reads in full as follows:

> The [v]eteran would be entitled to a rating under DC 5257 if the evidence reflected that he had severe, moderate, or slight recurrent subluxation or lateral instability. While the [v]eteran has complained of right knee instability; joint instability can be objectively diagnosed upon clinical examination. Thus, even if the [v]eteran sincerely believes that his knee experiences instability, instability itself, can be clinically tested for and diagnosed. Thus, the Board finds the objective testing reflecting no instability or subluxation, more probative than the [v]eteran's lay statements in this regard. As such, a rating under this diagnostic code is not applicable.

R. at 10. This appeal followed.

## II. ANALYSIS

As we have stated, three DCs are relevant to the veteran's appeal. We begin by considering DC 5257 and lateral knee instability. We then turn to DC 5260 concerning knee flexion and DC 5261 concerning knee extension. Remand is appropriate with respect to the Board's discussion of all these DCs.

4

A. DC 5257 and Lateral Knee Instability

We review Board decisions concerning the assignment of a disability rating, such as the one at issue here, for clear error. *See Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997). However, even in the context of such deferential review, the Court reviews questions of law without deference to the Board. *See Butts v. Brown*, 5 Vet.App. 532, 538 (1993) (en banc). And as with all its determinations of law or fact, the Board must support its findings concerning the assignment of a disability rating with a statement of reasons or bases sufficient for a claimant to understand the decision and this Court to engage in meaningful judicial review. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). After explaining what the law is, something we do without deference to the Board, we remand this matter to the Board so that, with this information, it can render a decision that complies with its reasons-or-bases requirement. 38 U.S.C. § 7104(d)(1).

*1. Under DC 5257, the Board can't find objective medical evidence categorically more probative than lay Evidence without explaining why that is the case.*

The veteran principally argues on appeal that the Board erroneously required objective medical evidence of lateral instability of the knee to support a compensable rating under DC 5257. Appellant's Brief (Br.) at 10-14. The Secretary disagrees, asserting that the Board simply weighed all the evidence (both lay and medical) and concluded that the medical evidence was more probative than the veteran's lay statements on the issue. Secretary's Br. at 8-11. We conclude the veteran has the better of this argument.

The most natural reading of the decision on appeal is that the Board was working under the impression that objective medical evidence of lateral knee instability is required. The Board began its analysis section with the statement that it put "emphasis" on the medical evidence of record. R. at 8. The Board didn't explain why it did so. At other points, it appears that the Board determined that objective medical evidence is *categorically* more probative than lay evidence under DC 5257 with respect to lateral instability of the knee. And its statement, that "even if the [v]eteran sincerely believes that his knee experiences instability, instability itself, can be clinically tested for and diagnosed," only augments this suggestion that the Board didn't consider—or at least didn't consider fully—the lay evidence of lateral knee instability. R. at 10. To the extent the Board may have favored objective medical evidence over lay evidence, without any supporting reasons or bases for that finding, the Board erred.

In that regard, nothing in DC 5257 provides that objective medical evidence is required or is to be favored over lay evidence. 38 C.F.R. § 4.71a, DC 5257. Thus, under *Petitti*, "[it] certainly does not, by its terms, restrict evidence to 'objective' evidence." 27 Vet.App. at 427. The Board appears to have read a requirement into DC 5257 that's not there. The Board can't do that because, in doing so, the Board imposes a greater burden on a claimant than the law does. *See Massey v. Brown*, 7 Vet.App. 204, 208 (1994) ("The Board's consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law.").

Even if one read the Board decision not as grafting language onto DC 5257 but as determining, with respect to lateral knee instability, that lay evidence isn't competent (or that it's categorically less probative than medical evidence), there's still error. Viewed in this way, the Board didn't explain on what basis it may have implicitly concluded that, on the question of lateral instability, medical evidence is categorically more probative than lay evidence or that lay evidence is not competent at all.[5] If the Board decides that lay evidence isn't competent on this question,[6] it must do so clearly and with an appropriate supporting rationale. We caution the Board on remand that, when assessing whether lateral knee instability is the type of symptom about which a lay person is competent to testify, it must remain cognizant of the prohibition on making independent medical judgments. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998). As we have explained, "under *Colvin*, when a Board inference results in a medical determination, the basis for that inference must be independent and it must be cited." *Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011). Assuming the Board determines lay evidence is generally competent with respect to lateral knee instability,

---

[5] The Board's reasons-or-bases error is particularly surprising in this case. The language the Board used in the decision on appeal in this case is in relevant part almost identical to the language the Board used in its December 14, 2015, decision. *Compare* R. at 10 (2017 decision), *with* R. at 307-08 (2015 decision). The Board's failure to address its reasoning is difficult to explain, given that the issue of lay evidence supporting a finding of lateral knee instability was specifically addressed in the parties' joint motion for remand concerning the 2015 decision. *See* R. at 170-71. We trust the Board will take to heart this issue, now that there is precedential guidance on how this matter should be handled. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998).

[6] In *Jandreau v. Nicholson*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that "[w]hether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board rather than a legal issue to be addressed by" this Court. 492 F.3d 1372, 1377 (Fed. Cir. 2007). We note that with respect to observable symptomatology, there's some conflicting precedent concerning whose role it is to determine what matters lay persons are competent to testify to. In this regard, one can point to *Young v. McDonald*, in which the Federal Circuit held (after *Jandreau*) that, as a matter of law, "PTSD is not the type of medical condition that lay evidence, standing alone, is competent and sufficient to identify." 766 F.3d 1348, 1353 (Fed. Cir. 2014). We don't need to explore the contours of any tension because, as we have described, the Board's statement of reasons or bases for its decision is defective no matter what view one takes on this issue.

and provided it sets forth adequate reasons or bases,[7] it's free to discount such lay evidence on a case-by-case basis and to weigh that evidence as it sees fit in its role as fact finder.[8]

*2. The Board's error concerning DC 5257 wasn't harmless.*

Just because we've concluded that the Board's statement of reasons or bases is inadequate, our work hasn't ended. We're cognizant of our obligation to determine whether the veteran was prejudiced by the error we've identified. *See* 38 U.S.C. § 7261(b)(2) (requiring this Court to "take due account of the rule of prejudicial error"). On this record, we can't conclude that the Board's error concerning DC 5257 was harmless because there's lay evidence regarding knee instability in the record. *See, e.g.*, R. at 104, 318, 1104, 1322. For example, at an October 2015 Board hearing the veteran discussed the "instability" of his knee and how that affected him. R. at 318. And he reported instability when he was examined in February 2008, R. at 1322, and August 2009, R. at 1104.

To find the Board's reasons or bases error harmless, the Court (perhaps the first to do so) would have to independently weigh the veteran's lay statements against the medical evidence of record and then ultimately determine how all that evidence affected the metaphorical scales of justice on which that evidence was placed. This is a task best left to the Board in the first instance. *See Washington*, 19 Vet.App. at 367-68. This is especially so given the Board's obligation to consider the evidence's weight and credibility. *Id.* With a full understanding that it should consider both the medical and lay evidence on the question (assuming it finds lay evidence generally competent on the question), the Board may reach a different conclusion. Or perhaps the result will be the same even when the Board uses the correct standards for assessing the evidence.

B. Functional Loss Under 38 C.F.R. §§ 4.40 and 4.45

The veteran also argues that the Board failed to provide adequate reasons or bases for denying him an increased disability rating for his right knee based upon functional loss under 38 C.F.R. §§ 4.40 and 4.45. Appellant's Br. at 14-17; Reply Br. at 4-6. Specifically, the veteran contends that the Board failed to consider and address favorable evidence of the following: Functional loss, including evidence from February 2008 and August 2009 VA examinations

---

[7] *See* 38 U.S.C. § 7104(d)(1); *Allday*, 7 Vet.App. at 527; *Gilbert*, 1 Vet.App. at 57.

[8] *See Buchanan v. Nicholson*, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006) ("[T]he Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc."); *see also Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005).

reflecting weekly or biweekly flareups of moderate right knee pain that further limit his ability to walk; restrictions caused by this right knee, brought on by activities such as standing as long as 1 hour and walking as far as 1 mile; giving way, pain, weakness, and instability of the right knee; weakness, decreased right knee speed of joint motion, limited flexibility, and popping; and his use of a cane and knee brace before surgery. Appellant's Br. at 16; Reply Br. at 4-5.

Here, the Board denied the veteran a higher initial rating than 10% for his knee condition under DCs 5260 and 5261, an assessment including consideration of additional functional loss over and above that contemplated by those DCs. R. at 11. In this regard, the Board made the following findings:

> The Board acknowledges the [v]eteran's functional limitations on standing, walking, and the effect on his occupation due to the pain associated with his right knee disability. . . . In this case both the February 2008 and August 2009 VA medical examinations note the [v]eteran's right knee disability functional effect as decrease[d] mobility. However, limited mobility/decrease[d] range of motion is appropriately contemplated within the criteria. As such, the Board does not find that an increased rating is warranted for the [v]eteran's noted functional loss in excess of the provided 10 percent already granted for painful and limited motion.

*Id.*

The Court agrees with the veteran that when reaching this conclusion the Board did not adequately explain how it considered his functional loss due to pain, including during flareups. As recognized in *Mitchell v. Shinseki* and *DeLuca v. Brown*, §§ 4.40 and 4.45 permit consideration of a higher rating based on a greater limitation of motion due to pain on use, including during flareups, and based on weakened movement, excess fatigability, incoordination, and pain on movement, in addition to range of movement. *Mitchell*, 25 Vet.App. 32, 36-37 (2011); *DeLuca*, 8 Vet.App. 202, 206 (1995). Although the Board addressed functional loss in greater detail than it had in its December 2015 decision, its discussion in the decision currently on appeal is still deficient. For example, there is nothing in the Board's discussion to suggest that it assessed the functional loss the veteran experienced during flareups or whether the veteran's functional loss resulted in limitation of motion equivalent to the next higher rating under the appropriate DC. *See Thompson v. McDonald*, 815 F.3d 781, 784-86 (Fed. Cir. 2016) (affirming this Court's holding that a veteran's functional loss must result in limitation of motion sufficient to satisfy the next disability rating allowable for that particular disorder to be entitled to a higher disability rating under §§ 4.40 and 4.45). Additionally, the Board did not address the potentially favorable evidence of functional loss identified by the appellant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*,

78 F.3d 604 (Fed. Cir. 1996) (table); *see also* Appellant's Br. at 14-17; Reply Br. at 4-6. These failures constitute error. Accordingly, remand is warranted, so that the Board may properly assess functional loss. *Allday*, 7 Vet.App. at 527; *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.[9]

### III. CONCLUSION

The Board's May 17, 2017, decision denying a higher initial rating for patellofemoral syndrome of the right knee for the period from January 15, 2008, until April 14, 2010, is SET ASIDE and this matter is REMANDED for further proceedings consistent with this decision. On remand, the veteran may submit additional evidence and argument, *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018), and the Board must consider any such additional evidence or argument. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. § 7112.

---

[9] Given this disposition, the Court will not now address the remaining arguments and issues raised by the appellant, including whether the November 2016 VA retrospective examination was adequate. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order); *see also* Appellant's Br. at 18-20; Reply Br. at 6-9.