Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 210503-157165
DATE: August 31, 2021

ORDER

Entitlement to an evaluation of 10 percent, but no higher, for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal prior to December 9, 2020 is granted. 

Entitlement to an evaluation in excess of 30 percent for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal beginning December 9, 2020, is denied. 

Entitlement to a 10 percent evaluation for a left arm scar due to basal and squamous cell carcinoma prior to December 9, 2020, is granted. 

Entitlement to an evaluation in excess of 10 percent for a painful left arm scar associated with left arm scar due to basal and squamous cell carcinoma for the period on appeal beginning December 9, 2020, is denied. 

Entitlement to a 10 percent evaluation for a back scar due to basal and squamous cell carcinoma prior to December 9, 2020, is granted. 

Entitlement to an evaluation in excess of 10 percent for a painful back scar associated with a back scar due to basal and squamous cell carcinoma for the period on appeal beginning December 9, 2020 is denied. 

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is denied.

FINDINGS OF FACT

1. During the period on appeal prior to December 9, 2020, the Veteran's basal and squamous cell carcinoma with disfigurement of the head, face, or neck included a neck scar due to basal and squamous cell carcinoma that was 21cm in length; the Veteran's condition did not demonstrate more than one characteristic disfigurement under the criteria for DC 7800. 

2. During the period on appeal beginning December 9, 2020, the Veteran's basal and squamous cell carcinoma with disfigurement of the head, face, or neck included a left upper lip scar with a moderate deformity that caused asymmetry; the Veteran did not exhibit visible or palpable tissue loss and either gross distortion or asymmetry of two or more features or paired sets of features, or four or more characteristics of disfigurement. 

3. The Veteran was shown to have a left arm scar measuring 2.0 x 1.5 cm; the Veteran did not have a left arm scar with an area or areas of 144 in square (929cm square). 

4. During the period on appeal prior to and since December 9, 2020, the Veteran's left arm scar was tender to palpation with pain and irritation.

5. The Veteran's was shown to have a back scar measuring 7.0 x 2.0 cm; the Veteran did not have a back scar with an area or areas of 144 in square (929 cm square). 

6. During the period on appeal prior to and since December 9, 2020, the Veteran's back scar was tender to palpation with pain, burning, and hypopigmentation.

7. The Veteran's service-connected disabilities did not preclude him from securing and maintaining a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for an evaluation of 10 percent, but no higher, for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal prior to December 9, 2020, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.118, Diagnostic Code (DC) 7800, 7818.

2. The criteria for an evaluation in excess of 30 percent for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal beginning December 9, 2020, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.118, DC 7800, 7818.

3. The criteria for a 10 percent evaluation prior to December 9, 2020, for a left arm scar under DC 7802 have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.31, 4.118, DC 7802.

4. The criteria for an evaluation in excess of 10 percent for a painful left arm scar for the period on appeal beginning December 9, 2020 not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.118, DC 7804.

5. The criteria for a 10 percent evaluation prior to December 9,2 020, for a back scar under DC 7802 have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.31, 4.118, DC 7802.

6. The criteria for an evaluation in excess of 10 percent for a painful back scar for the period on appeal beginning December 9, 2020, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.27, 4.118, DC 7804.

7. The criteria for entitlement to a TDIU have not been met. 38 U.S.C. § 5107; 38 C.F.R. § 3.102, 3.340, 3.341, 4.16, 4.19

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1962 to March 1966. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from an April 21, 2021 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). On May 3, 2021, the Veteran timely submitted a Decision Review Request: Board Appeal (Notice of Disagreement) (VA Form 10182), under the modernized appeals system known as the Appeals Modernization Act (AMA). In the VA Form 10182, the Veteran elected the direct review lane. Consequently, the Board's review is limited to the evidence of record at the time of the issuance of the rating decision on April 21, 2021. 38 C.F.R. § 20.303.

Under the AMA, the Board may not consider any evidence that was added to the claims file during a period of time when new evidence was not allowed. 38 C.F.R. § 20.300. In this case, for example, the Veteran underwent VA examinations for his skin condition and the related scars in June 2021. Also, additional VA medical treatment records were added to the record in May 2021, June 2021, and July 2021. 38 C.F.R. § 3.2501. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2). 

I. Increased Ratings

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant's favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Separate ratings can be assigned for separate periods based on the facts found - a practice known as "staged" ratings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994); Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id. 

Hyphenated DCs are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the rating. 38 C.F.R. § 4.27. In the instant case, the Veteran's basal and squamous cell carcinoma with disfigurement of the head, face, or neck is rated under 7818-7800. 

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31. 

1. Increased ratings for basal and squamous cell carcinoma with disfigurement of the head, face, or neck

As background for this case, the Veteran first submitted an intent to file on November 13, 2018. He filed a formal claim of service connection for basal and squamous cell carcinoma in January 2018. In a March 2020 rating decision, the RO granted service connection for basal and squamous cell carcinoma with disfigurement of the head, face, or neck with a noncompensable (0 percent) evaluation under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7818. In May 2020, the Veteran filed a supplemental claim for increased ratings for basal and squamous cell carcinoma. In a November 2020 rating decision, the RO denied the Veteran's claim.

On December 9, 2020, the Veteran filed another supplemental claim for increased ratings for basal and squamous cell carcinoma. In a January 2021 rating decision, the RO granted an increased rating of 30 percent for basal and squamous cell carcinoma with disfigurement of the head, face, or neck under DC 7818-7800, effective December 9, 2020. 

In February 2021, the Veteran submitted a VA Form 20-0996 Request for Higher Level Review concerning the effective date of the 30 percent rating for basal and squamous cell carcinoma. In an April 2021 rating decision, the RO denied entitlement to an effective date prior to December 9, 2020, for the 30 percent evaluation for basal and squamous cell carcinoma. The Veteran appealed this decision in the May 2021 VA Form 10182 Notice of Disagreement. 

The Board notes that since the Veteran has continuously pursued his claim beginning from the date he submitted his intent to file on November 13, 2018, the current appeal period begins November 13, 2018. The more recent rating decision in April 2021, simply granted a staged rating for the disability. The appeal of the effective date for the 30 percent rating is subsumed by the claim for an increased disability rating because the partial grant of a higher rating for part of the appeal period was not a full grant of the benefit sought on appeal. See Harper v. Wilkie, 30 Vet. App. 356, 362 (2018). As such, the Veteran did not need to file an appeal as to the effective date issue. In looking at the record to determine if a higher rating is warranted during any part of the appeal period, the Board will necessarily be adjudicating the earlier effective date issue. See AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Fenderson v. West, 12 Vet. App. 119, 125-27 (1999). 

A. Applicable Law

As noted above, the Veteran's ratings for basal and squamous cell carcinoma have been awarded under DC 7818 or DC 7818-7800. In this regard, DC 7818 provides that malignant skin neoplasms (other than malignant melanoma) are rated as disfigurement of the head, face, or neck (DC 7800), scars (DC 7801, 7802, 7803, 7804, or 7805), or impairment of function. A Note provides that, if a skin malignancy requires therapy that is comparable to that used for systemic malignancies, i.e., systemic chemotherapy, X-ray therapy more extensive than to the skin, or surgery more extensive than wide local excision, a 100 percent evaluation will be assigned from the date of onset of treatment, and will continue, with a mandatory VA examination six months following the completion of such antineoplastic treatment. If there has been no local recurrence or metastasis, evaluation will then be made on residuals. If treatment is confined to the skin, the provisions for a 100 percent evaluation will not apply.

Under DC 7800, a 10 percent rating is assigned when one characteristic of disfigurement is present; and a 30 percent rating is warranted when there is visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or with two or three characteristics of disfigurement. A 50 percent rating is warranted for visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features, or with four or five characteristics of disfigurement. A maximum rating of 80 percent is warranted with visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features, or with six or more characteristics of disfigurement. 

Note (1) provides that the eight characteristics of disfigurement for purposes of evaluation under 38 C.F.R. § 4.118 are: Scar five or more inches (13 or more centimeters) in length; scar at least one-quarter inch (0.6 centimeters) wide at the widest part; surface contour of scar elevated or depressed on palpation; scar adherent to underlying tissue; skin hypo-or hyper-pigmented in an area exceeding six square inches (39 square centimeters); skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 square centimeters); underlying soft tissue missing in an area exceeding six square inches (39 square centimeters); or skin indurated and inflexible in an area exceeding six square inches (39 square centimeters).

Note (2) indicates that tissue loss of the auricle is rated under DC 6207, and anatomical loss of the eye is rated under DC 6061 or DC 6063, as appropriate. Note (3) provides that VA is to consider unretouched color photographs when evaluating under these criteria. Additionally, Note (4) reflects that VA is to separately evaluate disabling effects other than disfigurement that are associated with individual scars of the head, face, or neck, such as pain, instability, and residuals of associated muscle or nerve injury, under the appropriate diagnostic code(s) and apply 38 C.F.R. § 4.25 to combine the evaluation(s) with the evaluation assigned under DC 7800. Finally, Note (5) indicates that the characteristics of disfigurement may be caused by one scar or by multiple scars; the characteristics that are required to assign a particular evaluation need not be caused by a single scar in order to assign that evaluation. 

B. Discussion 

In a July 2018 private treatment note, the Veteran presented for an annual skin examination and continuing cancer surveillance for a history of basal cell carcinoma mainly involving his face, arms, and upper trunk, as well as multiple squamous cell carcinoma on his face and arms. The Veteran stated that his previous surgical sites were well-healed and asymptomatic. 

In an August 2018 private treatment note, the Veteran reported that he underwent a MOHS excision of basal and squamous cell carcinoma. The Veteran had two basal cell carcinomas of the mid posterior neck, the left upper forearm, and the right mid mandible that were excised in total with the biopsies. He stated that these areas were well-healed and asymptomatic. 

In a November 2018 letter, a private physician stated that the Veteran had encountered over 500 basal and squamous cell carcinomas on his face, scalp, back, chest, arms over the past 30 years. These lesions had been treated successfully with surgery, photodynamic therapy, and topical chemotherapy creams. 

At a June 2019 VA examination for basal and squamous cell carcinoma, the VA examiner diagnosed the Veteran with basal and squamous cell carcinoma of the face, back, arms, and hands. The Veteran stated that he had had multiple lesions of the face, neck, and arms over the years; and they had become more frequent recently. The last documented removal of a skin lesion was in October 2018. The Veteran had multiple scars, including a right neck scar measuring 21 x 0.3 cm. The Veteran did not have any current symptoms. The lesions had been excised, and the Veteran had been treated with a MOH's procedure. In the past 12 months, the Veteran had undergone photochemotherapy treatment of less than six weeks, as well as excisions. The VA examiner found that the Veteran's basal and squamous cell carcinoma was asymptomatic at the time of this examination. The condition did not impact the Veteran's ability to work. 

At a June 2019 VA examination for the Veteran's scars, the VA examiner reported scars on the Veteran's right neck, right arm, left arm, and back. The Veteran's right neck scar measured 21.0 x 0.4 cm, and he had other neck scars that were too numerus to count. The Veteran's neck scars were not painful, unstable, or due to burns. There was no gross distortion or asymmetry of facial features or visible or palpable tissue loss. The Veteran's scars did not result in limitation of function, and the scars did not impact the Veteran's ability to work. 

In an April 2020 letter, a private physician stated that the Veteran required continual monitoring for multiple new and recurrent skin cancers, including basal and squamous cell carcinomas. He had had over 500 skin cancers; and these lesions had been treated previously with surgery, photodynamic therapy, topical chemotherapy creams. 

In a July 2020 private treatment note, the examiner reported that the Veteran had several lesions biopsied in May 2020 revealing tumors extending to the base and lateral margins. The Veteran also had several lesions biopsied on his left mid-tricep, left mid upper arm, and left antecubital fossa. All these lesions proved to be nodular basal cell carcinoma, and they appeared excised in the planes examined. The Veteran stated that the lesions were healing well and were asymptomatic.

At an October 2020 VA examination for basal and squamous cell carcinoma, the VA examiner reported that the Veteran's diagnosis included tumors and neoplasms of the skin. The Veteran reported that he had dermatology follow up every six months for ongoing new cancers and recurring cancers on his face, arms, upper back, and neck. In the past 12 months, the Veteran had undergone photochemotherapy of less than six weeks, as well as MOHS treatment in 2018 and 2019. He also had excisions and freezing, most recently in 2019. The VA examiner stated that the Veteran currently had benign neoplasms related to his diagnosis. The Veteran's skin condition caused scarring or disfigurement of the head, face, or neck. The condition did not impact the Veteran's ability to work. 

At an October 2020 VA examination for scars, the VA examiner reported scars on the Veteran's right arm, left arm, neck, face, and upper back. The Veteran's neck had a scar measuring 21.0 x 0.5cm, as well as other scars too numerous to count. The neck scars were hypopigmented. The Veteran's neck scars were not painful, unstable, or due to burns. There was no elevation, depression, adherence to underlying tissue, or missing underlying soft tissue. There was no gross distortion or asymmetry of facial features or visibile or palpable tissue loss. The approximate total affected area of the head, face, and neck with hypo- or hyperpigmented areas was less than 36cm square. The Veteran's scars did not result in limitation of function, and the scars did not impact the Veteran's ability to work. 

In a November 2020 private treatment note, the Veteran presented for continuing cancer surveillance and a history of numerous basal and squamous cell carcinoma. The Veteran stated that the previous sites were well-healed and asymptomatic. 

In a December 2020 letter, a private physician stated that the Veteran had a history of over 500 skin cancers that he continued to develop. The Veteran required continual monitoring for multiple new and recurrent skin cancers, including basal cell carcinoma, squamous cell carcinoma, and melanoma. The cancer involved his upper back, face, neck, hands, and arms. 

In a December 2020 private treatment note, the Veteran presented for a definitive excision of a nodular basal cell carcinoma with fibrosis on the left anterior helix and a nodular basal cell carcinoma on the upper mid lip. The examiner noted that the basal cell carcinoma on the ear extended to the base, and the basal cell carcinoma on the upper lip extended to the biopsy margins. 

At a January 2021 VA examination for basal and squamous cell carcinoma, the Veteran reported that he saw dermatology every two months for evaluation and excisions, and he had had multiple excisions of cancerous skins cells over the last 18 months. The Veteran had also used a Keflex topical ointment. In December 2020, he had a MOHS procedure on his left upper lip and an excision on the left upper ear. The VA examiner noted that, post-procedure, the Veteran had open areas of skin that he stated were unable to be closed; and he had to stay home until his skin healed over. The Veteran noted that he also developed skin infections that required topical antibiotics. The VA examiner found that the Veteran's skin condition affected a total body area of between 20 percent and 40 percent and an exposed area of between 5 percent and 20 percent. The Veteran did not have any visible characteristic lesions at the time of the examination. The Veteran's condition included multiple hypopigmented areas of skin on the upper extremities, head, face, neck, chest, and back. The examiner noted that the Veteran had active malignant neoplasms or metastases related to his diagnosis, and treatment was ongoing. The Veteran had residual conditions or complications due to the neoplasm or treatment, including pain and irritation along the scars of the left upper lip, left upper ear, left arm, and left upper back. The Veteran's skin condition caused scaring or disfigurement of the head, face, or neck. 

At a January 2021 VA examination for scars, the VA examiner reported scars on the Veteran's left upper lip, left upper ear, left upper back, and left arm. Regarding the Veteran's left upper lip and left upper ear, the Veteran reported a MOHS procedure from December 2020. The Veteran's left upper lip had a disfigurement of 2.0 x 1.0 cm with sharp pain and irritation. The Veteran's left upper ear scar measured 2.0 x 1.0 cm with sharp pain and irritation. The left upper lip and left upper ear scars were not unstable. The left upper lip scar had hypopigmentation and abnormal texture, and the left upper ear scar had hypopigmentation. The left upper lip and left upper ear scars were tender to palpation. The approximate total area of the head, face, and neck with hypo- or hyperpigmented areas was 2.0 cm square. The approximate total area of the head, face, and neck with abnormal texture was 1.0 cm square; and the approximate total area of the head, face, and neck with missing underlying soft tissue was 1.0 cm square. The left upper lip had a moderate deformity that caused assymetry. None of the Veteran's scars resulted in limitation of function, and the scars did not impact the Veteran's ability to work. The diagnoses of left upper lip scar with deformity and left upper ear scar were reported by the Veteran as recently occurring with excision by the dermatologist. The new areas of cancer were related to the service-connected basal and squamous cell carcinoma. 

The Board has additionally reviewed the balance of the Veteran's other medical treatment records from the period on appeal. The findings in the other medical treatment records are substantially similar to those noted in the medical examinations and treatment records described above. 

During the period on appeal prior to December 9, 2020, the Veteran was shown to have a neck scar due to basal and squamous cell carcinoma that was 21 cm in length. Thus, he had one characteristic disfigurement under the criteria for a 10 percent evaluation under DC 7800. See 38 C.F.R. § 4.118. Therefore, the Board finds that, for the period on appeal prior to December 9, 2020, the Veteran should be awarded an evaluation of 10 percent under DC 7818-7800. 

Prior to December 9, 2020, the Veteran was not shown to have a scar of the head, face, or neck that had at least one-quarter inch (0.6 centimeters) width at the widest part; surface contour of the scar elevated or depressed on palpation; a scar adherent to underlying tissue; skin hypo-or hyper-pigmented in an area exceeding six square inches (39 square centimeters); skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 square centimeters); underlying soft tissue missing in an area exceeding six square inches (39 square centimeters); or skin indurated and inflexible in an area exceeding six square inches (39 square centimeters), as would be required for an evaluation in excess of 10 percent. He also did not have visible or palpable tissue loss or either gross distortion or asymmetry of at least one feature or paired set of features (nose, chine, forehead, eyes (including eyelids), ears (auricles), cheeks, or lips). Thus, prior to December 9, 2020, an evaluation in excess of 10 percent is not warranted in this case. 

Concerning the period on appeal beginning December 9, 2020, at the January 2021 VA examination, the VA examiner found that the Veteran's left upper lip had a moderate deformity that caused asymmetry. The Board also notes that the RO granted the Veteran the 30 percent evaluation beginning on December 9, 2020 based on the date of the December 9, 2020 supplemental claim. The Board is focusing its adjudication on whether a next higher disability rating is available to the Veteran, so the Board will not disturb that effective date. Based on the above, the Board finds that the Veteran has been appropriately assigned a 30 percent evaluation for the period on appeal beginning December 9, 2020. 

Throughout the entire period on appeal, the Veteran's basal and squamous cell carcinoma with disfigurement of the head, face, or neck did not exhibit visible or palpable tissue loss and either gross distortion or asymmetry of two or more features or paired sets of features; or four or more characteristics of disfigurement, as would be required for an evaluation in excess of 30 percent under DC 7818-7800. See 38 C.F.R. § 4.118. 

It cannot be factually ascertained prior to December 9, 2021, that he met the criteria for the 30 percent rating.

It is generally within the competence of a lay person to identify and observe the effect of a disability under the ordinary conditions of daily life. Moreover, the Veteran's condition manifests with some symptoms readily observable by a lay person. Accordingly, the lay evidence is competent evidence to this extent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Petitti v. McDonald, 27 Vet. App. 415, 427-28 (2015); Fountain, 27 Vet. App. at 274-75. However, the rating schedule for evaluating scars also requires precise medical findings, including findings as to pigmentation, induration, and tissue loss. It does not appear that the Veteran has a background in medicine, or a related field, such that he can be recognized as having the medical expertise needed to make such medical findings. Accordingly, his testimony is useful in understanding those symptoms he is competent to identify and the effect of the disability on his daily life, but does not provide a basis for assigning a higher rating. See Petitti, 27 Vet. App. at 427-28.

In reaching the foregoing conclusion, the Board has resolved all doubt in the Veteran's favor, which has resulted in an increased rating of 10 percent for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal prior to December 9, 2020. However, to the extent that higher ratings are denied herein, the Board finds that the preponderance of the evidence is against such aspects of the Veteran's claim. Consequently, the benefit of the doubt doctrine is not applicable in such regard, and the Veteran's claim is otherwise denied. 38 U.S.C. § 5107; 38 C.F.R. § 4.3, 4.7.

2. Increased ratings for a left arm scar and a back scar

The Veteran contends that he is entitled to increased ratings for a left arm scar due to basal and squamous cell carcinoma and increased ratings for a back scar due to basal and squamous cell carcinoma.

As noted earlier, the Veteran first submitted an intent to file on November 13, 2018, and he filed a formal claim of service connection for basal and squamous cell carcinoma in January 2018. In a March 2020 rating decision, the RO granted service connection for basal and squamous cell carcinoma with disfigurement of the head, face, or neck.

In an April 2020 rating decision, the RO awarded the Veteran service connection for a left arm scar due to basal and squamous cell carcinoma with a noncompensable (0 percent) evaluation under DC 7802. The RO also awarded the Veteran service connection for a back scar due to basal and squamous cell carcinoma with a noncompensable rating under 7802. Both of these awards were given an effective date of November 13, 2018, based on the November 13, 2018 intent to file. 

In May 2020, the Veteran filed supplemental claims for increased ratings for the left arm scar and back scar. In a May 2020 rating decision, the RO denied the Veteran's claims. 

On December 9, 2020, the Veteran filed supplemental claims for increased ratings for the left arm scar and back scar. In a January 2021 rating decision, the RO granted an evaluation of 10 percent for the left arm scar under DC 7804, effective December 9, 2020. The RO also granted an evaluation of 10 percent for the back scar under DC 7804, effective December 9, 2020.

In February 2021, the Veteran submitted a VA Form 20-0996 Request for Higher Level Review concerning the effective date of the 10 percent ratings for the left arm scar and back scar. In a February 2021 rating decision, the RO denied increased ratings for the back scar. In an April 2021 rating decision, the RO denied entitlement to an effective date prior to December 9, 2020 for the 10 percent evaluations for the left arm scar and the back scar. The Veteran appealed the April 2021 rating decision in the May 2021 VA Form 10182 Notice of Disagreement.

The Board notes that, as the Veteran has continuously adjudicated his claim since the date he submitted his original intent to file on November 13, 2018, the current appeal period goes back to November 13, 2018. As indicated, the appeal for earlier effective dates is subsumed by the pending claim for increase for the service-connected disabilities. 

A. Applicable Law

As the disabilities at issue concern scars of the left arm and back, the Board has considered whether DCs 7800, 7801, 7802, 7804, or 7805 are applicable. As noted above, the Veteran's ratings for his left arm scar and back scar have been awarded under DCs 7802 and 7804. 

DC 7800, which was further discussed in the previous section, pertains to scars and disfigurement of the head, face, or neck. Thus, DC 7800 is not applicable to scars of the left arm and back. 

DC 7801 pertains to burn scars or scars due to other causes, not of the head, face, or neck, that are associated with underlying soft tissue damage. Under this DC, a 10 percent rating is assigned when the scar(s) cover an area or areas of at least 6 square inches (39 sq. cm.) but less than 12 square inches (77 sq. cm.). Higher ratings are available for scars of greater area.

DC 7802 pertains to burn scars or scars due to other causes not of the head, face, or neck that are not associated with underlying soft tissue damage. Under this DC, a single 10 percent rating is assigned when the scar(s) cover an area or areas of 144 square inches (929 sq. cm) or greater.

Under DC 7804, one or two scars that are unstable or painful warrant a 10 percent rating. A 20 percent rating is warranted where there are three or four scars that are unstable or painful, and a 30 percent rating is warranted where there are five or more scars that are unstable or painful. Note (1) states that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) states that if one or more scars are both unstable and painful, the rater is to add 10 percent to the evaluation that is based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under DCs 7800, 7801, 7802, or 7805 may also receive an evaluation under this diagnostic code when applicable.

DC 7805 provides that other scars (including linear scars) and other effects of scars evaluated under DC 7800, 7802, 7802, and 7804 require the evaluation of any disabling effect(s) not considered in a rating provided under DCs 7800-04 under an appropriate DC. 38 C.F.R. § 4.118.

B. Discussion 

In a July 2018 private treatment note, the Veteran presented for an annual skin examination and continuing cancer surveillance for a history of basal cell carcinoma mainly involving his face, arms, and upper trunk, as well as multiple squamous cell carcinoma on his face and arms. The Veteran stated that his previous surgical sites were well-healed and asymptomatic. 

In an August 2018 private treatment note, the Veteran reported that he underwent a MOHS excision of basal and squamous cell carcinoma. The Veteran had two basal cell carcinomas of the mid posterior neck, the left upper forearm, and the right mid mandible that were excised in total with the biopsies. He stated that these areas were well-healed and asymptomatic. 

In a November 2018 letter, a private physician stated that the Veteran had encountered over 500 basal and squamous cell carcinomas on his face, scalp, back, chest, arms over the past 30 years. These lesions had been treated successfully with surgery, photodynamic therapy, and topical chemotherapy creams. 

At a June 2019 VA examination for basal and squamous cell carcinoma, the VA examiner diagnosed the Veteran with basal and squamous cell carcinoma of the face, back, arms, and hands. The Veteran had multiple scars, including a left arm scar measuring 2 x 1.5cm and a back scar measuring 7 x 2cm. The Veteran did not have any current symptoms. The lesions had been excised, and the Veteran had been treated with an MOH's procedure. In the past 12 months, the Veteran had undergone photochemotherapy treatment of less than six weeks, as well as excisions. The VA examiner found that the Veteran's basal and squamous cell carcinoma was asymptomatic at the time of this examination. The condition did not impact the Veteran's ability to work. 

At a June 2019 VA examination for the Veteran's scars, the VA examiner found that the Veteran's scars on his trunk or extremities were not painful, unstable, or due to burns. The Veteran had a left arm scar measuring 2.0 x 1.5cm. The scar was not tender to palpation or unstable upon inspection, and it did not have underlying soft tissue damage. The Veteran had a back (posterior trunk) scar measuring 7.0 x 2.0 cm. The back scar was not tender to palpation or unstable upon inspection, and it did not have underlying soft tissue damage. The left arm scar was 3 cm square, and the back scar was 15 cm square. None of the scars had underlying soft tissue damage. The Veteran's scars did not result in limitation of function, and the scars did not impact the Veteran's ability to work. 

In a July 2020 private treatment note, the examiner reported that the Veteran had several lesions biopsied on his left mid-tricep, left mid upper arm, and left antecubital fossa. All these lesions proved to be nodular basal cell carcinoma, and they appeared excised in the planes examined. The Veteran stated that the lesions were healing well and were asymptomatic.

At an October 2020 VA examination for basal and squamous cell carcinoma, the Veteran reported that he had dermatology follow up every six months for ongoing new cancers and recurring cancers on his face, arms, upper back, and neck. In the past 12 months, the Veteran had undergone photochemotherapy of less than six weeks, as well as MOHS treatment in 2018 and 2019. He also had excisions and freezing, most recently in 2019. The VA examiner stated that the Veteran currently had benign neoplasms related to his diagnosis. The condition did not impact the Veteran's ability to work. 

At an October 2020 VA examination for scars, the VA examiner reported scars on the Veteran's right arm, left arm, neck, face, and upper back. The VA examiner found that the Veteran's scars on his trunk or extremities were not painful, unstable, or due to burns. The Veteran left arm had multiple hypopigmented scar areas from the back of the hand to the upper arm. The upper back also had multiple areas of hypopigmented scars. The VA examiner stated that the Veteran had scars with underlying tissue damage, including 100 cm square on the left upper extremity and 50 cm square on the posterior trunk. The Veteran's scars did not result in limitation of function, and the scars did not impact the Veteran's ability to work. 

In a November 2020 private treatment note, the Veteran presented for continuing cancer surveillance and a history of numerous basal and squamous cell carcinoma. The Veteran stated that the previous sites are well-healed and asymptomatic. 

In a December 9, 2020 statement, the Veteran stated that, at the October 2020 VA examination, the VA examiner incorrectly stated that the Veteran's scars were not painful. The Veteran stated that the scars on his hands, eyes, mouth, ears, nose, forehead, and the back of his neck remain painful, even after they have healed. He noted that he has very little unscarred skin left on his face, ears, hands, and arms due to having so much skin cancer removed during treatment. 

In a December 2020 letter, a private physician stated that the Veteran had a history of over 500 skin cancers that he continued to develop. The Veteran required continual monitoring for multiple new and recurrent skin cancers, including basal cell carcinoma, squamous cell carcinoma, and melanoma. The cancer involved his upper back, face, neck, hands, and arms. 

At a January 2021 VA examination for basal and squamous cell carcinoma, the Veteran reported that he saw dermatology every two months for evaluation and excisions, and he had had multiple excisions of cancerous skins cells over the last 18 months. The Veteran had also used a Keflex topical ointment. The VA examiner found that the Veteran's skin condition affected a total body area of between 20 percent and 40 percent and an exposed area of between 5 percent and 20 percent. The Veteran did not have any visible characteristic lesions at the time of the examination. The Veteran's condition included multiple hypopigmented areas of skin on the upper extremities, head, face, neck, chest, and back. The examiner noted that the Veteran had active malignant neoplasms or metastases related to his diagnosis, and treatment was ongoing. The Veteran had residual conditions or complications due to the neoplasm or treatment, including pain and irritation along the scars of the left arm and left upper back. 

At a January 2021 VA examination for scars, the VA examiner reported scars on the Veteran's left upper back and left arm. The VA examiner found that the Veteran's scars on his trunk or extremities were not painful, unstable, or due to burns. The Veteran's left arm scar measured 2.0 x 1.5 cm, and it was tender to palpation with pain and irritation. His left upper back scar measured 7.0 x 2.0 cm, and it was tender to palpation with pain, burning, and hypopigmentation. The left arm and left upper back scars were not unstable upon inspection, and they did not have underlying tissue damage. 

In a March 2021 VA Caregiver Certificate, the examiner stated that the Veteran had chronic pain from the melanomas on his back. The Veteran reportedly went to dermatology every other month where they took off or froze something, and it had gotten to the point where the dermatologist told him he does not have skin left to cover those spots. The Veteran's arm hurt with constant pain from the same problems as well. 

In another VA Caregiver Certificate from the next day, the Veteran was reported to have limited range of motion of the upper extremities related to scarring from skin cancer removals. The primary one was on the Veteran's back. The Veteran was noted to have difficulty washing and drying his back due to limited range of motion and hypersensitivity of scarring of the back from melanoma removals. 

The Board has additionally reviewed the balance of the Veteran's other medical treatment records from the period on appeal. The findings in the other medical treatment records are substantially similar to those noted in the medical examinations and treatment records described above. 

Concerning DC 7801, the Board finds that the left arm scar and back scar are not associated with underlying soft tissue damage, and DC 7801 is not applicable in this case. The Board acknowledges that the October 2020 VA examination stated that the Veteran's left upper extremity (left arm) had 100 cm square of scars associated with underlying soft tissue damage and his posterior trunk (back) had 50 cm square of underlying soft tissue damage. However, this reported finding is inconsistent with the other evidence of record. The Veteran's medical records, including the June 2019 and January 2021 VA examinations, have consistently reported that the Veteran's left arm and back scars did not have underlying soft tissue damage. Reconciling this evidence into a consistent whole, it appears mostly likely the October 2020 VA examination's findings of left arm and back scars associated with underlying soft tissue damage were a misunderstanding or clerical mistake on the part of the October 2020 VA examiner. 

Concerning DC 7802, the Veteran was shown to have a left arm scar measuring 2.0 x 1.5 cm and a back scar measuring 7.0 x 2.0 cm. The Veteran did not have a scar on his left arm or back with an area or areas of 144 in square (929 cm square), as would be required for a compensable evaluation under DC 7802. Thus, for both the left arm scar and the back scar, the Veteran has been appropriately assigned a noncompensable (0 percent) evaluation under DC 7802. 

Concerning DC 7804, the Veteran is service connected for one left arm scar and one back scar. As shown above, the preponderance of the evidence of record demonstrates that, prior to the January 2021 VA examination, the Veteran's VA medical records consistently reported that he did not have pain related to his left arm and back scars. Similarly, as late as November 2020, the Veteran reported to his private medical providers that his scars were well-healed and asymptomatic. At the January 2021 VA examination, the VA examiner found that the Veteran's left arm scar was tender to palpation with pain and irritation; and his left upper back scar was tender to palpation with pain, burning, and hypopigmentation. The Veteran credibly stated in a December 2020 statement that his scars were painful at the October 2020 VA examination. 

The Board also notes that the RO granted the Veteran the 10 percent evaluation under DC 7804 with an effective date of December 9, 2020, based on the date of the December 9, 2020 supplemental claim. The evidence indicates that the 10 percent disability was extant throughout the entire appeal period. 

Throughout the entire period on appeal, the Veteran's left arm scar and back scar were not unstable or due to burns. The Veteran also is not service connected for more than two left arm scars or more than two back scars, as would be required for 

In sum, the evidence supports assignment of a 10 percent evaluation for the Veteran left arm scar and back scar prior to December 9, 2020. For the period on appeal beginning December 9, 2020, the preponderance of the evidence is against the assignment of an evaluation in excess of 10 percent for a painful left arm scar under DC 7804, and the preponderance of the evidence is also against the assignment of an evaluation in excess of 10 percent for a painful back scar under DC 7804.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. The claims are granted to this extent. As the preponderance of the evidence is otherwise against the Veteran's claims, that doctrine is not applicable in the instant appeal, and his claims must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

II. TDIU

The Veteran contends that he is entitled to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU). 

A. Applicable Law

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). A claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) may be raised as a separate claim, or it may be raised in the context of an initial rating or a claim for an increase. See Rice v. Shinseki, 22 Vet. App. 447, 452-53 (2009). 

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to a TDIU is based on an individual's particular circumstances." Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, when adjudicating a TDIU claim, VA must take into account the individual veteran's education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164 (1991) (level of education is a factor in deciding employability); Friscia v. Brown, 7 Vet. App. 294 (1994) (considering Veteran's experience as a pilot, his training in business administration and computer programming, and his history of obtaining and losing 19 jobs in the previous 18 years); Beaty v. Brown, 6 Vet. App. 532 (1994) (considering Veteran's 8th grade education and sole occupation as a farmer); Moore v. Derwinski, 1 Vet. App. 356 (1991) (considering Veteran's master's degree in education and his part-time work as a tutor).

Age may not be considered as a factor when evaluating unemployability or intercurrent disability, and it may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19. There must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a non-service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question, however, is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In Ray v. Wilkie, 31 Vet. App. 58 (2019), the United States Court of Appeals for Veterans Claims (Court) held that the initial extra-schedular referral decision under § 4.16(b) should address whether there is "sufficient evidence to substantiate a reasonable possibility that a veteran is unemployable by reason of his or her service-connected disabilities". Moreover, the Court defined the term "unable to secure and follow a substantially gainful occupation" in § 4.16(b) to include two components: one economic and one noneconomic. The economic component means an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person. The non-economic component includes consideration of the veteran's history, education, skill, and training; whether the veteran has the physical ability to perform the type of activities required by the occupation at issue; and whether the veteran has the mental ability to perform the activities required by the occupation at issue.

B. Discussion 

In this case, the Veteran's claim for a TDIU arose during the pending of his current appeal for increased ratings for basal and squamous cell carcinoma, a left arm scar, and a back scar. These claims were first filed on November 13, 2018. Thus, the current period on appeal for the issue of entitlement to a TDIU begins on November 13, 2018. 

Service connection has been established for bilateral hearing loss; tinnitus; basal and squamous cell carcinoma with disfigurement of the head, face, or neck; right arm scars; left arm scar; back scar; and right eye corneal intraepithelial neoplasia.

During the period on appeal, the Veteran's bilateral hearing loss has been rated as 50 percent disabling, and the Veteran's tinnitus has been rated as 10 percent disabling. The Veteran's basal and squamous cell carcinoma with disfigurement of the head, face, or neck is rated at 10 percent disabling for the period on appeal prior to December 9, 2020; and it is rated as 30 percent disabling for the period on appeal beginning December 9, 2020. The Veteran has a noncompensable evaluation for right arm scars and a 10 percent evaluation for painful right arm scars. He has a noncompensable evaluation for a left arm scar; and he also has a 10 percent evaluation for a painful left arm scar beginning December 9, 2020. The Veteran has a noncompensable evaluation for a back scar; and he also has a 10 percent evaluation for a painful back scar beginning December 9, 2020. The Veteran's right eye corneal intraepithelial neoplasia is rated as 10 percent disabling beginning on October 9, 2020. 

As discussed in the earlier section, the Board found that the Veteran is entitled to a 10 percent evaluation for basal and squamous cell carcinoma with disfigurement of the head, face, or neck for the period on appeal prior to December 9, 2020. The Board will add this to the Veteran's combined evaluations.

For the period on appeal beginning November 13, 2018, the Veteran has a combined disability evaluation of 70 percent. Thus, the Veteran does meet the schedular threshold for consideration of a TDIU during the period on appeal. 

The question in this case becomes whether the Veteran's service-connected disabilities have precluded him from participating in substantially gainful employment during the period on appeal. 

The Veteran first submitted a VA Form 21-8940 Veteran's Application for Increased Compensation Based on Unemployability (TDIU Application) in March 2021. In the TDIU Application, the Veteran stated that his skin cancer and heart disease prevented him from securing or following any substantially gainful occupation. He reported that his disability affected full-time employment on November 1, 2013. He last worked full time on July 31, 2005, and he became too disabled to work on November 1, 2013. The most he had ever earned in a year was $45,000.00 in 2004 when he worked as an investigator. He stated that he did not leave his last job because of his disability. He has not tried to obtain employment since he became too disabled to work. He reported that he completed his high school education. He did not have any other education or training before or since becoming too disabled to work. 

In a statement from the same day, the Veteran stated that he first became unable to sustain gainful employment due to his heart disease in November 2013 when he had heart surgery with two stents placed. Due to his heart condition, he could not physically handle the demands of employment. He further stated that he has continued to be unable to sustain gainful employment due to his basal and squamous cell carcinoma and melanoma. He has been treated for basal and squamous cell carcinoma and melanoma for about 35 years, but he has needed treatment procedures for multiple new and recurrent skin cancer at least every other month for the past few years. He has had over 500 occurrences of skin cancer that have continued to develop throughout the course of treatment. The Veteran stated that, due to the frequency of doctor's appointments and the healing time required after every treatment procedure, he is unable to work, and he has not attempted to apply for employment.

In a March 2021 statement from a few weeks later, the Veteran reported that he worked full-time for an energy company as a field investigator from 1968 to August 2005. He stated that, during this employment, he had to take at least two days off a month for his skin cancer treatment. He noted his highest gross monthly earnings was about $3,750.00. 

In a December 2009 VA Psychiatry Consult, the Veteran reported that he had worked part-time, and he last worked in 2007. In an August 2014 VA Mental Health Note, he stated that he worked at an outdoor equipment store after he retired. He noted that he took some of his boss's responsibilities in that job. He also stated that it is now hard to get up in the morning and be motivated to do anything because he is retired and does not have a job. 

In a March 2015 VA Cardiopulmonary Rehabilitation Consult, the Veteran reported that he worked for an energy company as a customer service representative and bill collector, and he retired 10 years ago. 

In a December 2018 VA Mental Health Note, the Veteran reported that, in the past, he had worked as a bill collector. He had that job for years, and he worked his way up in the company. He noted that he had no formal schooling after the military outside of some classes and certifications. 

In a March 2021 VA Caregiver Certificate, the Veteran reported that he was last employed in 2005 as a lead investigator in the credit department of an energy company. 

Looking at the Veteran's medical records, the symptoms and functional effects of his service-connected skin disabilities is described herein above. The most recent evidence, such as the January 2021 VA examination, shows that the skin disabilities had no functional effect on his ability to work. 

Concerning the Veteran's hearing loss and tinnitus, at a March 2019 VA examination, the VA examiner diagnosed the Veteran with bilateral mixed hearing loss. The Veteran's hearing loss impacted ordinary conditions of daily life, including the ability to work, in that he has a hard time hearing background noise or with multiple speakers. The words seem garbled. He needs to face the speaker and ask people to repeat themselves. He also stated that he does not hear his wife. The Veteran regularly wears binaural hearing aids. 

The Veteran reported recurrent tinnitus that is intermittent. It primarily occurred in the left ear. The Veteran's tinnitus did not impact ordinary conditions of daily life, including the ability to work. 

At an October 2020 VA Audiology Note, the Veteran reported poor hearing bilaterally. The examiner found mild to severe bilateral sensorineural hearing loss. 

Concerning the Veteran's right eye corneal intraepithelial neoplasia, at a January 2021 VA examination, the VA examiner noted that the condition had been treated with excision and radiation. The Veteran's decrease in visual acuity or other visual impairment was not attributable to this condition. The Veteran also had bilateral nuclear cataracts and bilateral exposure keratopathy, which are not service connected, and his visual impairment was due to the exposure keratopathy. The Veteran's eye conditions impacted his ability to work in that blurred vision and discomfort are constant and make the Veteran uncomfortable to drive. 

In an October 2020 private treatment record, the Veteran was reported to have had eye surgery on his right eye to remove a precancerous lesion from his cornea and conjunctiva. The pathology came back as several corneal intraepithelial neoplasia. The examiner noted that this was a precancerous condition that, if left untreated, progresses to squamous cell carcinoma. 

The Board has additionally reviewed the balance of the Veteran's other medical treatment records from the period on appeal. The findings in the other medical treatment records are substantially similar to those noted in the medical examinations and treatment records described above. 

The Board notes that, although the Veteran stated that his heart condition impacted his ability to secure or follow any substantially gainful occupation, he is not currently service connected for a heart condition. As mentioned earlier, the Board cannot consider non-service-connected disabilities in a TDIU claim.

Based on the evidence as described above, the Board finds that, although the Veteran's service-connected disabilities may have negatively impacted his employability during the period on appeal, they did not preclude him from securing and maintaining a substantially gainful occupation.

The Board acknowledges that the functional impairment associated with the Veteran's service-connected disabilities include difficulty hearing and painful scars. However, the evidence of record indicates that the Veteran has experience working as a bill collector and a lead investigator in the credit department of an energy company. During the period on appeal, the Veteran has not been precluded from performing work that allowed for accommodations for his physical limitations. The Veteran's educational and work background is not so limited as to have precluded occupations of the nature described above during the period on appeal. The difficulty hearing and painful scars might impact his ability to work to some extent, but not in all forms of substantially gainful employment for which he is qualified by his professional background. 

The evidence, such as a March 2021 VA Caregiver Certificate, demonstrate a significant disability level. However, this was due to a combination of service-connected and, primarily, nonservice-connected disabilities. Because it was this combination of disabilities, rather than the service-connected disabilities alone, which caused his unemployability, a TDIU cannot be granted. 

In short, the preponderance of the evidence from the period on appeal does not demonstrate that the Veteran's symptoms from his service-connected disorders would have prevented him from securing or maintaining gainful employment. The Board finds that the Veteran's service-connected disabilities have not precluded him from performing the physical and mental acts necessary to secure and maintain a substantially gainful occupation consistent with his educational and occupational background. 

Therefore, based on the foregoing, the Board finds that an award of a TDIU is not warranted in this case. In reaching such a determination, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

 

 

Corey Bosely

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Dawn A. Leung, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.